**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corewest Resources LLC-FZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Gideon Group Incorporated, et al.,<br><br>Defendants. | No. CV-24-03613-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 26). The Motion has been fully briefed. For the following reasons, the Court **partially grants** the Motion.

**I.   BACKGROUND**

The Complaint alleges as follows. Plaintiff South Oil LLP ("South Oil") is a Kazakhstani oil and gas company. (Doc. 1 at 3 ¶ 8, 4 ¶ 17.) Plaintiff Corewest Resources LLC-FZ ("Corewest"), an Emirati company, advised South Oil on various financial matters, including the transaction giving rise to this case. (*Id.* at 3 ¶ 9, 4 ¶ 17.)

South Oil wanted to utilize American capital markets to fund its operations. (*Id.* at 4 ¶ 17.) Accordingly, Plaintiffs spoke with Arizona companies Defendant Gideon Group Inc. ("Gideon Group") and Defendant Gideon Capital Management LLC ("Gideon Capital") (collectively, "Gideon")[1] and their representatives Defendant James Robinson

---

[1] The Complaint provides that "[r]epresentatives of Gideon Group and Gideon Capital made no distinction between the two companies, so this Complaint refers to them collectively as 'Gideon' unless otherwise specified." (Doc. 1 at 4 ¶ 19 n.2.) This Order does the same.

and Defendant Salman Khan (collectively, the "Individual Defendants").[2] (*Id.* ¶ 19.) The Complaint alleges that Robinson is an Arizona resident, and that Kahn is a resident of both the United Arab Emirates and Arizona.[3] (*Id.* at 3 ¶¶ 12–13.)

Defendants proposed that they could raise funds by issuing bonds on South Oil's behalf in the United States by replicating Gideon's financials and claimed AAA credit rating. (*Id.* ¶ 21.) This process would require Gideon to swap South Oil's financials for its own when issuing the bond. (*Id.*) Plaintiffs signed a non-disclosure agreement with Gideon Group not knowing that this deal structure would have constituted fraud. (*Id.* ¶¶ 22–23.) Plaintiffs also later discovered that Gideon did not have a AAA credit rating and could not have issued the proposed bond using its own financials. (*Id.* ¶ 22.)

On June 17, 2022, South Oil signed an engagement letter with Gideon Capital to hire it as a financial advisor to assist in raising funds through either debt or equity financing. (*Id.* at 5 ¶ 24.) In the letter, Gideon agreed to perform various services related to the financing. (*Id.* at 5 ¶ 25.) In return, South Oil agreed to pay Gideon: 2% of the principal amount of debt or equity raised and $400,000 upon the execution of a binding term sheet. (*Id.* ¶ 26.) The engagement letter provided that it would be governed by Arizona law. (*Id.* at 6 ¶ 27.) Two term sheets were executed: a June 23, 2022 term sheet that was later amended; and an October 12, 2022 term sheet. (*Id.* at 6 ¶¶ 28–29, 8 ¶ 44.)

The Complaint outlines the terms of the amended June term sheet and the October term sheet as follows. Under the June term sheet, Gideon would establish Newco, LLC ("Newco"), through which Gideon would issue $400 million worth of corporate bonds under a four-year loan term. (*Id.* at 6, ¶¶ 32, 24, 7 ¶ 39.) Newco would transfer $230 million of the bond proceeds to South Oil and Gideon would retain a $100 million cash reserve. (*Id.*) As collateral for the bonds, South Oil would provide: (1) a bank guarantee of $90 million; and (2) assignments of payments that it received through a separate contract with a commodity trading company. (*Id.* at 6–7 ¶ 34.) Gideon would also receive a

---

[2] Defendants filed a Suggestion of Death (Doc. 40) as to Kahn on November 21, 2025.
[3] In their Response, Plaintiffs appear to concede that Kahn is only an Emirati citizen. (Doc. 34 at 14.)

financial advisory fee, a financing transaction fee, an engagement fee, and interest on the bond. (*Id.* at 7 ¶ 35, 8 ¶¶ 40–41.) Originally, the engagement fee was $400,000—which South Oil paid—but Gideon later charged an additional $1.5 million. (*Id.* at 7 ¶ 35, 8 ¶ 41.)

The October term sheet was similar to the June term sheet. (*Id.* ¶ 44.) Under the October term sheet, Newco would issue another $400 million worth of bonds under a one-year loan term and transfer $225 million of the bond proceeds to South Oil. (*Id.*) Gideon would similarly receive additional fees, including a $750,000 engagement fee. (*Id.* ¶ 46.) Corewest paid the $750,000 engagement fee on South Oil's behalf. (*Id.* at 8–9 ¶¶ 47–48.)

The Complaint goes on to allege that Defendants collected its engagement fees but failed to perform according to the term sheets. (*Id.* at 9 ¶ 49.) Additionally, Defendants made multiple false representations regarding its purported progress. (*Id.* at 10 ¶ 61.) Defendants also proposed additional business deals that, if carried out, would have violated United States and international laws. (*Id.* at 9 ¶ 54.) Accordingly, on May 30, 2023, South Oil terminated the term sheets. (*Id.* at 11 ¶ 63.)

Plaintiffs thus bring the following claims. Two counts of fraudulent inducement against all Defendants. (*Id.* at 11–14.) Two counts of breach of contract against Gideon Capital. (*Id.* at 14–15.) And finally, a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against all Defendants. (*Id.* at 16–17.)

In its Motion, Defendants argue that this Court lacks subject matter jurisdiction over this case. (Doc. 26 at 1–2.) First, Defendants argue there is no federal question in this case because Plaintiffs do not properly bring a RICO claim. (*Id.* at 2.) Second, Defendants argue that there is no diversity jurisdiction because "both Plaintiffs are foreign entities and at least one Defendant is a foreign alien." (*Id.*) Defendants additionally contend that Gideon Group, Kahn, and Robinson are improper parties because: (1) the relevant contracts were only with Gideon Capital; and (2) Plaintiff does not allege any facts making it proper to expose Kahn and Robinson to individual liability as corporate officers of Gideon Capital. (*Id.*)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* "[A] Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion" and the same legal standard applies to both motions. *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation modified); *see also Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. DISCUSSION

#### A. State Law Claims

The Court begins with Plaintiff's state law claims—fraudulent inducement and breach of contract.

##### 1. *Fraudulent Inducement*

Under Arizona law, fraudulent inducement claims have nine elements:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033–34 (Ariz. Ct. App. 2010). Fraudulent inducement claims are subject to the heightened pleading requirements of Rule 9(b). *Dickman v. N.Y. Life Ins. Co.*, No. CV-25-00138-PHX-DWL, 2025 WL 3033640, at *4 (D. Ariz. Oct. 30, 2025). Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud or mistake" but "conditions of a person's mind may be

alleged generally." The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Regarding the parties' identities, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation modified).

To start, Plaintiffs fail to allege fraudulent inducement against the Individual Defendants. Ultimately, Plaintiffs' claims stem from a transaction between Gideon and South Oil. Generally, a corporation's owners are not liable for claims against the corporation. *See JTF Aviation Holdings Inc v. CliftonLarsonAllen LLP*, 472 P.3d 526, 530 (Ariz. 2020). To impose liability on a corporation's owners, there must be "sufficient evidence that 1) the corporation is the alter ego or business conduit of a person, and 2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *Id.* (citation modified). Plaintiffs do not allege that Gideon is the alter ego of the Individual Defendants; there are no allegations of "intermingling of corporate and personal assets, affairs or funds, or that the corporate structure was in any way used for other than legitimate corporate purposes." *Id.* (citation modified). Accordingly, the Court dismisses the fraudulent inducement claim against the Individual Defendants with leave to amend.

The Complaint also fails to allege that Corewest has a claim of fraudulent inducement claim. The Complaint only alleges that Corewest was a party to preliminary discussions between South Oil and Gideon and that Corewest paid South Oil's engagement fee. (Doc. 1 at ¶ 19.) However, these allegations do little to demonstrate the required elements of fraudulent inducement—much less meet Rule 9's heightened pleading standards. At bottom, the Complaint does not identify a particular false statement made to Corewest upon which it relied. Accordingly, Corewest's fraudulent inducement claim is

- 6 -

dismissed without prejudice.

However, the Complaint adequately alleges that South Oil has fraudulent inducement claims against Gideon. The Complaint, with the requisite particularity, outlines the date and manner in which Gideon made and broke discrete promises to South Oil. Defendants do not meaningfully contest this issue in their Motion or Reply.

In their Motion, Defendants primarily argue that South Oil's fraud claim fails because "the fraudulent inducement claims identify terms from the Engagement itself, not representations made that induced the South Oil to enter the Engagement." (Doc. 26 at 13.) In their Response, Plaintiffs correctly assert that "Defendants cite no authority for this claim, nor do they point to anything specific that Plaintiffs failed to plead with particularity." (Doc. 34 at 10.) In their Reply, Defendants again state that the Complaint "focus[es] exclusively on terms contained within the Engagement itself, rather than any actionable misrepresentation made prior to contract formation." (Doc. 38 at 6.) Defendants go on to note that "[t]his is fatal under Arizona law, which requires a plaintiff to allege a false statement made *before* the agreement, not a *post hoc* dispute over contract performance." (*Id.*) It is unclear why Defendants did not cite this purported Arizona law. Still, South Oil's fraud claims are clearly predicated on allegedly false statements made by Gideon designed to induce South Oil to enter a contract with and pay fees to Gideon. Additionally, Arizona law recognizes that a breach of contract and fraudulent inducement claim can stem from the same event; however, claimants cannot seek double recovery in such circumstances. *See Aspen Biotech Corp. v. Wakefield*, No. 1 CA-CV 20-0384, 2021 WL 3503399, at *20 (Ariz. Ct. App. Aug. 10, 2021).

The Court recognizes that the Complaint, in some instances, refers to Gideon Group and Gideon Capital collectively. However, Plaintiff is not eschewing their Rule 9(b) obligations. The Complaint notes that Gideon Group and Gideon Capital acted through shared representatives who "made no distinction between the two companies." (Doc. 1 at 4 ¶ 19.) The Complaint plausibly alleges that delineating between the two entities would be impracticable at this juncture, but does so where possible. For example, the Complaint

alleges that the October 2022 term sheet was signed by Robinson on Gideon Capital's behalf, but the that the agreement was executed on Gideon Group stationary, and that Gideon Group ultimately issued a receipt for the engagement fee. (Doc. 1 at 8–9 ¶ 48.) The thrust of Rule 9(b)'s heightened pleading standard is to ensure that "defendant[s] can prepare an adequate answer from the allegations." *Schreiber*, 806 F.2d at 1400 (citation modified). The Complaint allows Defendants to do so. Accordingly, the Court denies Defendants' Motion as to South Oil's fraudulent inducement claims against Gideon Capital and Gideon Group.

### 2. *Breach of Contract*

The Court now considers Plaintiffs' breach of contract claims against Gideon Capital. "To state a cause of action for breach of contract, the Plaintiff must plead facts alleging (1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021) (citation modified). "For an enforceable contract to exist, there must be an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citation modified).

The Complaint plausibly alleges a breach of contract claim between South Oil and Gideon Capital. The Complaint establishes that South Oil contracted with Gideon Capital, which then breached that contract to South Oil's detriment. Defendants do not appear to contest this claim in their Motion. Instead, Defendant's argue that the breach of contract claim should be dismissed because the "Complaint fails to identify any legal or contractual relationship between South Oil, Corewest, and Gideon Group." (Doc. 26 at 7–8.) This argument is moot; Plaintiffs only bring breach of contract claims against Gideon Capital.

However, the Complaint fails to allege that a contract existed between Corewest and Gideon Capital. Neither does the Complaint allege that Corewest was a third-party beneficiary of the contract between South Oil and Gideon Capital. Instead, the Complaint only alleges that Corewest paid the $750,000 engagement fee associated with the October

2022 term sheet on South Oil's behalf. (Doc. 1 at 8 ¶ 48.) However, Plaintiffs cite no authority suggesting that Corewest has a breach of contract claim merely because it paid on South Oil's behalf. Accordingly, the court dismisses Corewest's breach of contract claims without prejudice.

### B. RICO

Finally, the Court addresses Plaintiffs' RICO claim. "A civil RICO claim requires allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff." *Swartz*, 476 F.3d at 760–61. "[R]acketeering activity is any act indictable under various provisions of 18 U.S.C. § 1961 . . . ." *Bolos v. Waldorf=Astoria Mgmt. LLC*, 762 F. Supp. 3d 975, 1011 (D. Haw. 2025) (citation modified). Here, Plaintiff alleges that Defendants' acts constitute wire fraud in violation of 18 U.S.C. § 1343, which is a racketeering activity under § 1961. (Doc. 1 at 17 ¶ 104.) "Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). The Complaint does not specifically outline how Defendants used United States' wires.[4] Regardless, the RICO claim ultimately fails because the Complaint fails to establish a pattern of racketeering activity. At bottom, Plaintiffs are "trying fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992).

"A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity . . . within a period of ten years." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing § 1961(5)). "While at least two predicate acts are necessary to indicate a pattern, two predicate acts are not necessarily sufficient." *McGowan v. Weinstein*, 562 F. Supp. 3d 744, 750 (C.D. Cal. 2021) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989)). The predicate acts must be continuous, which "is

---

[4] The Complaint makes multiple allegations pertaining to the transfer of money but does not identify how that money was transferred. (Doc. 1 at 6 ¶ 29, 8 ¶ 48.)

- 9 -

both a closed- and open-ended concept." *H.J.*, 492 U.S. at 241. Closed-ended continuity is "a closed period of repeated conduct." *Id.* Open-ended continuity is "past conduct that by its nature projects into the future with a threat of repetition." *Id.* Because Plaintiffs do not allege conduct that is likely to continue into the future, there is no open-ended continuity. Thus, only closed-ended continuity is at issue.

Closed-ended continuity can be established by "proving a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the closed-ended continuity requirement." *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (citation modified) (quoting *H.J.*, 492 U.S. at 242). "When determining whether a plaintiff adequately alleges a pattern of activity with closed-ended continuity, courts in this Circuit often consider: (1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries." *McGowan v. Weinstein*, 505 F.Supp.3d 1000, 1012 (C.D. Cal. 2021) (citation modified). These factors are not met here.

First, the number and variety of predicate acts weigh against continuity. Here, Plaintiffs allege that Defendants "fraudulently induced Plaintiffs and other parties to pay inflated engagement services for services that Defendants were unable to provide and had no intention of providing." (Doc. 1 at 16 ¶ 99.) Plaintiffs further contend that "[t]he pattern of racketeering activity consists of multiple instances of engagement fee fraud . . . in which Defendants fraudulently induced entities to engage Gideon for a fee for securities-related services that Gideon had no ability and no intention to perform." (*Id.* at 17 ¶ 104.) Nevertheless, the Complaint only provides details pertaining to Gideon's behavior between June 2022—when South Oil initially engaged Defendants—to May 2023—when Plaintiffs terminated its contracts with Defendants. (*Id.* at 5 ¶ 24, 11 ¶ 63.) The alleged fraud seems to be born exclusively out of the June and October 2022 term sheets. This does not constitute a substantial period of time. Although duration is not determinative, "courts routinely find that alleged racketeering activity lasting less than a year does not constitute

a closed-ended pattern." *Barsky v. Spiegel Acct. Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11, 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir.2004)). Accordingly, this factor weighs against continuity.

Additionally, the alleged fraud is borne out of a single engagement between South Oil and Gideon. While Plaintiffs effectively allege two instances of fraud predicated on the violation of the term sheets, those terms sheets were nearly identical and were reached in the course of a single transaction between South Oil and Gideon.

The remaining factors also cut against continuity here. The alleged racketeering activity involved "a limited number of actual victims"—South Oil and Corewest. *See Kan-Di-Ki, LLC v. Sorenson*, 723 F. App'x 432, 434 (9th Cir. 2018). Moreover, it is questionable whether South Oil and Corewest are fairly labeled as "separate victims"; both entities' alleged injuries were borne out of the same engagement. Additionally, it is questionable whether Corewest suffered its own injury. As previously discussed, it is unclear that Corewest paying an engagement fee on South Oil's behalf constitutes an injury where the engagement fee arises out of contract to which Corewest was neither a party nor a third-party beneficiary.

At bottom, Plaintiffs' claims are born out of a contract between South Oil and Gideon. While the alleged facts might give rise to "simple breach of contract and fraud claims," these "are not the types of activities that RICO was intended to eliminate. Any other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity.'" *Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000). Other courts "have cautioned against imposing civil RICO liability for garden-variety violations of the mail and wire fraud statutes because it will be the unusual fraud that does not enlist the mails and wires in its services at least twice." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 n.15 (4th Cir. 2002) (citation modified). Accordingly, the Court dismisses Plaintiffs' RICO claim without prejudice.[5]

---

[5] Dismissal of Plaintiffs' RICO claim without prejudice reflects the Ninth Circuit's liberal application of Rule 15. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Leave

**C. Subject Matter Jurisdiction**

The Court concludes by addressing subject matter jurisdiction. Federal courts are courts of limited jurisdiction and may only hear cases as authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court has subject matter jurisdiction over civil actions that either: (1) arise under federal law, "federal question jurisdiction," *see* 28 U.S.C. § 1331; or (2) are between diverse parties where "where the matter in controversy exceeds the sum or value of $75,000," "diversity jurisdiction," *see* § 1332(a). If a court has federal question jurisdiction, it may hear state law claims that are sufficiently related to the federal law claims, "supplemental jurisdiction." *See* § 1367(a).

The Court lacks federal question jurisdiction over this case because the RICO claim has been dismissed. Accordingly, the Court lacks supplemental jurisdiction over the state law claims in this case. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

However, the Court now has diversity jurisdiction over this matter. Originally, as Plaintiffs concede, the Court lacked diversity jurisdiction over this case because it involved foreign plaintiffs suing a foreign defendant, Kahn. (Doc. 34 at 14); *see HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238–39 (9th Cir. 2022) ("It has long been established that diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." (citation modified)). However, this Order dismisses all claims against Kahn without prejudice. If Plaintiffs decide to amend their Complaint, this Court will only have jurisdiction if either: (1) Plaintiffs successfully amend their RICO claim; or (2) Plaintiffs no longer pursue claims against Kahn.

Assuming Plaintiffs still decide to pursue claims against Kahn, Defendants have

---

to amend should be granted if it appears at all possible that the plaintiff can correct the defect." (citation modified)). Although highly unlikely, it is not theoretically impossible for there to be a RICO claim buried in some permutation of the facts contained in the Complaint.

filed a Suggestion of Death (Doc. 40) indicating that Kahn has passed away. Pursuant to Rule 25(a), "[i]f a party dies and the claim is not extinguished . . . [a] motion for substitution may be made by any party or by the decedent's successor or representative." Although this issue has not been briefed, it appears that Plaintiff's claims against Kahn are not extinguished by death. *See* A.R.S. § 14-3110 ("Every cause of action . . . shall survive the death of the person entitled thereto or liable therefor.")[6]; *see Harry v. Arizona*, No. CV-19-2234-PHX-DLR (JFM), 2021 WL 11421845, at *2 (D. Ariz. Sep. 30, 2021) (noting that whether a claim is extinguished is generally governed by state law). Thus, a motion for substitution must be filed within ninety days "after service of a statement noting the death." *Id.* The ninety days has not yet lapsed.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting in part** Defendants Motion for Judgment on the Pleadings (Doc. 26).

**IT IS FURTHER ORDERED dismissing** the following claims without prejudice: Corewest's fraudulent inducement claims; Corewest's breach of contract claims; South Oil's fraudulent inducement claims as to the Individual Defendants; and the RICO claim.

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend the claims dismissed without prejudice. If Plaintiffs so choose, they must file a First Amended Complaint no later than thirty (30) days after the date this Order is issued.

Dated this 16th day of December, 2025.

Honorable Susan M. Brnovich
United States District Judge

---

[6] The following causes of action extinguish upon a person's death: "a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy." § 14-3110.